**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KENNETH E. HICKS, III** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-00015** |
| **DARREL VANNOY, WARDEN** | **SECTION: "E"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.   *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Kenneth E. Hicks, III, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.   In April 2013, Hicks was charged with second-degree murder.[1]   In January 2016, a jury found him guilty as charged.[2]   His motion for a new trial was denied, and he was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.[3]

---

[1]  State Rec., Vol. 1 of 7, Grand Jury Indictment, St. John the Baptist Parish.

[2]  State Rec., Vol. 1 of 7, Trial Minute Entry, 01/22/2016.

[3]  State Rec., Vol. 1 of 7, Sentencing Minute Entry, 02/22/2016. *See* State Rec., Vol. 5

On direct appeal, appointed counsel for Hicks raised two assignments of error:    (1) he was denied the right to present a defense when the trial judge excluded evidence regarding the deceased victim's criminal conviction record and (2) prosecutorial misconduct occurred during closing argument when the prosecutor personally attacked defense counsel by suggesting that his defense amounted to a denigration of the value of the life of the victim.[4] On February 8, 2017, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[5]   On November 13, 2017, the Louisiana Supreme Court denied his application for writ of certiorari.[6]

On or about November 6, 2018, Hicks submitted his application for post-conviction relief to the state district court.[7]    In that application, he claimed trial counsel was ineffective for denying him the right to testify and not informing him about a pretrial plea offer, and that cumulative trial counsel error denied him a fair trial.    On January 22, 2019, the state district court denied his application for post-conviction relief.[8]    He filed a supervisory writ application with the Louisiana Fifth Circuit.    On March 13, 2019, the Louisiana Fifth Circuit denied relief on the merits and rejected his cumulative error claim as

_____

of 7, Transcript of Sentencing.

[4]  State Rec., Vol. 6 of 7, Louisiana Fifth Circuit No. 16-KA-0462, Appellant Brief.

[5]  *State v. Hicks*, 2016-KA-462 (La. App. 5 Cir. 2/08/17), 213 So.3d 458; State Rec., Vol. 6 of 7.

[6]  *State v. Hicks*, 2017-KO-0445 (La. 2017), 230 So.3d 205; State Rec., Vol. 7 of 7.

[7]  State Rec., Vol. 5 of 7, Application for Post-Conviction Relief and Memorandum in Support.

[8]  State Rec., Vol. 5 of 7, State District Court Judgment, 1/22/19.

not cognizable for review in an application for post-conviction relief.[9]    Hicks filed his related supervisory writ application with the Louisiana Supreme Court.[10]    That writ application was denied without additional stated reasons on November 5, 2019.[11]

On or about December 23, 2019, Hicks filed the instant federal application for habeas corpus relief.[12]    In that application, he urged the following grounds for federal relief:    (1) he was denied the right to present a defense, (2) he was denied due process based on prosecutorial misconduct that occurred during closing argument, (3) trial counsel was ineffective for denying him the right to testify in his own defense and for failing to inform him about a plea offer, and (4) trial counsel's errors cumulatively denied him a fair trial. The State concedes that the federal petition is timely.    The State contends that some of the claims may be unexhausted and he is not entitled to relief on the merits.[13]    Hicks filed a reply arguing that all claims were properly exhausted in the state courts and warrant relief.[14]

## Facts

On direct appeal, the Louisiana Fifth Circuit briefly summarized the facts adduced at trial:

At trial, Dontae Bond, Defendant's nephew, testified that on the night of

---

[9]  State Rec., Vol. 6 of 7, *State ex rel. Hicks v. State*, 19-KH-47 (La. App. 5 Cir. 3/13/19).

[10]  State Rec., Vol. 7 of 7, Louisiana Supreme Court Application for Supervisory Writs, No. 2019-KH-586.

[11]  *State ex rel. Hicks v. State*, 2019-KH-0586 (La. 11/05/19), 281 So.3d 660.

[12]  Rec. Doc. 1, 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

[13]  Rec. Doc. 8.

[14]  Rec. Doc. 9.

February 20, 2013, he was at Alex's Sports Bar[15] with two friends. While having drinks and talking to people in the patio area of the bar, he heard a gunshot. Mr. Bond looked back and saw Defendant holding a gun, and he also saw a man on the ground. He did not see anyone else in that room with a gun after the gunfire. Mr. Bond identified the victim as his friend, "Turk."[16] He asserted that he and Defendant were not together that night, but he and Defendant were in the bar at the same time.

Mr. Bond testified that after the shooting, he and his friends left. They drove around and then went to Defendant's house. Mr. Bond stated that he spoke to Defendant and asked him what happened, after which Defendant said, "Don't say nothing." The police arrived afterwards. Mr. Bond indicated that the police arrested him in connection with the shooting, and he gave three statements to them. He said he initially told them he did not know anything, but ultimately he told the police what happened because he did not want to be charged with a crime he did not commit.

Wilfred Lewis testified that on February 20, 2013, he also was in Alex's Sports Bar. He stated that he arrived at 10:15 p.m., after which his friend, "Turk," asked him to give him a ride home. Mr. Lewis sat in the patio area of the bar and waited while "Turk" helped his uncle, the owner of the bar, clean the area. While sitting there, Mr. Lewis heard a voice and then "Turk's" voice, after which Mr. Lewis looked down for a second and then heard a shot. Mr. Lewis testified that when he looked up, he saw "Turk" spin around and fall on a table. A man, whom he later identified as Defendant, turned around and had a gun in his right hand. Defendant put the gun in his pocket. Mr. Lewis explained that when Defendant passed by him to leave, he brushed against Defendant. Defendant then turned around and pointed a gun at Mr. Lewis, and Mr. Lewis held up his hands begging Defendant not to shoot him. Mr. Lewis testified that Defendant subsequently backed out the screen door, walked to a car across the street, and left the scene.

Mr. Lewis recalled that Defendant was not upset and had no emotional response after the shooting. He stated that he did not know Defendant's name, but he would never forget his face. He also stated that no one else had a gun that night. Mr. Lewis was positive that Defendant was in the bar that night, and Defendant shot "Turk." Mr. Lewis admitted that he had seven convictions for possession of cocaine and other non-drug convictions. Mr. Lewis insisted that no one made promises to him for his testimony.

---

[15]  Amanda Roh, a former employee of the St. John Parish Sheriff's Office, testified that Alex's Sports Bar was located at 119 East 24th Street in Reserve, Louisiana.

[16]  Ms. Roh testified that the victim's name was Anthony Young.

The victim, Anthony Young, died as a result of the shooting. Dr. Samantha Huber, who was accepted as an expert in forensic pathology, testified that she performed the autopsy on the victim. She determined that the cause of death was a gunshot wound to the inner aspect of his left eye with a bullet going through the base of his skull through his brain and coming to rest in a fracture at the back right of his skull. Dr. Huber stated that she retrieved the projectile and gave it to a crime scene technician. Dr. Huber testified that the gunshot wound was from an intermediate range of six inches to two feet away. She further stated that the toxicology report reflected that there was cocaine and alcohol in the victim's system. Dr. Huber asserted that there was evidence of recent drug use because there was "parent cocaine" in his blood.

Detective Michael Pugh of the St. John Parish Sheriff's Office crime scene division testified that on the night of February 20, 2013, he responded to a call involving a homicide at Alex's Sports Bar. When he arrived, he collected evidence and took photographs. He identified the contents of the victim's pockets, which included cocaine.[17]  Detective Pugh stated that he searched Defendant's home but found no guns or ammunition inside. He further stated that he searched the Nissan vehicle parked in front of Defendant's home and seized a 9mm Taurus handgun from the trunk and two phones from the interior of the vehicle. Detective Pugh asserted that he collected a Winchester .45 caliber shell casing from the floor of the bar. He maintained that no gun was ever found that linked Defendant to the crime.

Detective Walter Stevens, Jr. of the St. John Parish Sheriff's Office testified that on February 20, 2013, he responded to a call involving a homicide at Alex's Sports Bar. His investigation led him to arrest Defendant and Mr. Bond. Defendant did not give a statement and wanted an attorney. Mr. Bond initially denied knowing anything but later admitted that Defendant shot the victim. Detective Stevens testified that Mr. Lewis later contacted him and positively identified Defendant in a photographic lineup as the shooter. He further testified that Mr. Lewis also positively identified Mr. Bond as being present at the time of the shooting.

Detective Juan Watkins of the St. John Parish Sheriff's Office testified that he interviewed Mr. Lewis in connection with the homicide that occurred on February 20, 2013. Mr. Lewis recounted the events of the evening in question to the detective. Detective Watkins presented Mr. Lewis with a photographic

---

[17]  Dr. Huber testified that the coroner's office wrote in the report that the Sheriff's Office had "coke" in evidence. Detective Pugh identified the contents of the victim's pocket. He also identified "a sealed evidence envelope with a clear plastic bag containing three clear plastic bags containing one white powder, second bag containing one white powder and the third containing a white pill." Detective Pugh stated that it was sent to the Louisiana State Police Crime Lab for a drug analysis, but he was not furnished any results from that analysis.

lineup, after which Mr. Lewis positively identified Defendant.

Laneka Frank–Hicks, Defendant's wife, provided an alibi for Defendant. She testified that on February 20, 2013, at 9:15 p.m., she contacted Defendant and told him that she was on her way home. She arrived home at 9:30 p.m. When she got inside, Defendant was sitting on the sofa, watching television and eating. Mrs. Frank–Hicks testified that she got in the bathtub at 10:00 p.m., and she and Defendant went to bed no later than 11:00 p.m. She recounted that at approximately 2:30 a.m., her daughter called and told her the police were looking for her and Defendant. Mrs. Frank–Hicks explained that she heard a knock at the door, and when she opened it, officers were present. She further explained that the police subsequently obtained a search warrant and searched her house and her vehicle. Mrs. Frank–Hicks testified that she told an officer that Defendant told her he had gone to Alex's Sport's Bar earlier that day.

Detective Stevens testified in rebuttal that when he went to Defendant's house, he observed four black males congregated around a Nissan Maxima vehicle, and Defendant was standing right by the vehicle. He further testified that when he informed Defendant that he and the other subjects were to come with him to the Criminal Investigations Division for an interview, Defendant wanted to notify his wife that he was going to be leaving with them. Detective Stevens testified that he believed Defendant knocked on the bedroom door to awaken his wife, and she followed them outside.[18]

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both. A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

---

[18] *State v. Hicks*, 213 So.3d at 460-62 (footnotes in original).

determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 572 U.S. 415, 426 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an

incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Id.* (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

### A.  *Exclusion of Evidence-Right to Present a Defense*

Hicks asserts that the trial court improperly excluded evidence regarding the victim's criminal conviction record in violation of his right to present a defense. The claim was considered and rejected by the state courts on direct appeal. In denying the claim, the Louisiana Fifth Circuit reasoned:

> Defendant argues the trial judge erred by prohibiting him from presenting to the jury reliable evidence of the victim's felony conviction record, as that evidence was relevant and probative to his defense. Defendant asserts that, since his defense was that he did not kill anyone and this was not a claim of self-defense, it was error to prohibit him from presenting such evidence where the record tended to support the defense that other individuals may have had a motive to kill the victim. He claims that the victim was a convicted felon with a long record of narcotics distribution, a notoriously violent activity, and that, at the time of his death, he was carrying cocaine on his person packaged for retail distribution and was intoxicated on the drug. Defendant contends that the trial judge's ruling excluding this evidence violated his Sixth Amendment right to present a defense.
>
> The State responds that the trial judge's ruling in this matter was proper. The State further responds that the victim's criminal conviction record is inadmissible because there has been neither a claim of self-defense nor a claim

of an overt act on the part of the victim.

The record reflects that Defendant filed a Motion in Limine to Admit Evidence of Victim's Criminal Convictions. In that motion, Defendant moved the trial court for a pre-trial ruling allowing admissibility of the victim's criminal convictions, as supplied by the St. John Parish Clerk of Court, and the victim's rap sheet, which was furnished by the District Attorney's Office. Defendant asserted in his motion that no motive had been ascribed to Defendant to explain the victim's killing by him. He stated that the victim was found with cocaine in his blood and urine and with cocaine and other drugs on his person. Defendant also stated that the victim had at least three felony convictions for drug distribution, as well as illegal discharge of a weapon, simple possession of marijuana and paraphernalia, and was scheduled to be in court the day following his death for proceedings in St. John case no. 2012–CR0190 "A," for "aggravated assault on a police officer." Defendant noted in his motion that the Sheriff's Office failed to send the drugs found in the victim's possession to the State Crime Lab until the defense filed a motion for the testing and requested a court hearing on the matter. He contended that he had a fundamental right to present a defense that included the presentation of circumstances that were relevant in the context of this case.

On September 2, 2015, Defendant filed a Memorandum in Support of Defendant's Motion in Limine to Introduce Victim's Rap Sheet at Trial. In that memorandum, citing La. C.E. art. 406, Defendant stated that he desired to introduce evidence of the victim's criminal convictions showing that the victim had a habit and routine practice of conducting narcotics transactions, with the attendant dangers therein. He listed the convictions as follows: (1) St. John Case No. 2000–CR–543, on September 5, 2002, the victim pleaded guilty to possession of cocaine; (2) in St. John Case No. 1997–CR–153, on November 3, 1997, the victim pleaded guilty to distribution of cocaine; (3) in St. John Case No. 1996–CR–483, the victim pleaded guilty to illegal discharge of a weapon; (4) in St. John Case No. 2001–CR–555, the victim pleaded guilty to possession of marijuana and possession of paraphernalia; and (5) in St. John Case No. 2005–CR–452, the victim pleaded guilty to possession with intent to distribute cocaine. Defendant notes that this list of convictions was taken from the St. John Clerk of Court's database and did not include any convictions that might have occurred outside St. John Parish.

In that memorandum, Defendant also asserted that the State's principal witness, Dontae Bond, had several convictions involving crimes of violence by firearm and that the persons accompanying Mr. Bond on the night of the murder, "Snowman" and "Clickem," each had several drug violation convictions. Defendant maintained that the purpose for the introduction of the victim's criminal convictions was to bolster his defense that the victim's habitual and routine criminal behavior involving illegal drug transactions created a situation where a jury could find the victim had many enemies. He

further maintained that, in the absence of a motive, forensic evidence, or eyewitness testimony, presentation of such evidence was relevant to establish reasonable doubt that Defendant was the aggressor. Defendant noted that he had no interest in establishing the victim's bad character but rather the life the victim had chosen to live was a circumstance Defendant should have been allowed to exhibit to the jury.

The State filed a Memorandum in Opposition of Defendant's Motion in Limine to Introduce Victim's Rap Sheet at Trial on September 25, 2015. In its memorandum, the State argued that the victim's alleged lifestyle of drug distribution, use, and abuse and weapons could easily be viewed by a jury as dangerous character that should not be admissible at trial. The State further argued that there is no indication of a hostile demonstration or overt act by the victim at the time of the offense. As such, the State contended that under La. C.E. art. 404(A)(2), such evidence was inadmissible.

On September 29, 2015, the trial judge issued a written judgment with Reasons ruling that the victim's criminal record was inadmissible. The trial judge stated in pertinent part:

> In the instant case, the victim's criminal record is not relevant because Defendant is not claiming self-defense nor has an "overt act" by the victim been alleged. Defendant has not laid a foundation supporting any relevance of such character evidence. There was no showing made that Defendant was aware of the victim's criminal record. Moreover, the victim's criminal record, as alleged by Defendant, does not include any prior specific incidents of aggression conducted by the victim, but rather it specifies only acts of conducting narcotics transactions. Accordingly, evidence of the victim's criminal record offered for the purpose of explaining defendant's state of mind should be excluded, as the victim's alleged drug habit is not relevant to prove a violent habit existed that was a routine practice or to defend Defendant's case. LSA C.E. art. 406. Comment (b) of La. C.E. art. 406 provides that this code article is included in order to distinguish treatment of habit and routine evidence from that of character evidence, which generally is inadmissible. Therefore, the victim's criminal record is not admissible.

The trial judge concluded:

> Defendant bears the burden of laying a foundation to support the relevance of such character evidence to prove why disclosure of the victim's criminal record is necessary, and this Court finds that he failed to meet his burden. After considering Defendant's motion and balancing the competing interests, this Court concludes that Defendant's need for disclosure of the victim's criminal record and its admissibility at trial is not essential to a fair trial.

After he was convicted, Defendant filed a motion for new trial, arguing *inter alia*, that the trial judge erred by denying his motion to admit the victim's rap sheet. Defendant contended that had the victim's criminal history been admitted, the jury may well have considered that the shooting involved a drug deal gone bad, and the jury might have been swayed by the fact that Mr. Lewis had seven convictions for possession of cocaine, among other things. In his motion, Defendant asserted that La. C.E. art. 406 allowed evidence which is relevant to prove that the conduct of a person on a particular occasion was in conformity with habit or routine practice. Defendant further asserted that his effort to identify the habit or routine practice by way of presentation of a long criminal history of convictions should have been granted.

At the hearing on the motion, Defendant made arguments similar to those he made in his written motion for new trial, including arguments regarding the trial judge's denial of his request for admission of the victim's criminal convictions. The prosecutor responded that there was a pre-trial motion regarding the motion to admit the victim's rap sheet, that the trial judge had denied it, and that he did not think Defendant sought review of that ruling. The trial judge subsequently denied the motion for new trial, stating in pertinent part:

The victim's rap sheet, of course, is a little bit more of a, of a, I think, a fuzzy area but I don't think that there is a, in my own mind, there's a rational connection between the fact that he may have been in possession of drugs and had a history of possession of drugs and had a history of possession of drugs and possession of weapons—there was no claim of self-defense in this trial. So even if he had a reputation for having been armed in the past, I don't know what, what that would have tended to show in the, in the trial because there was no issue of self-defense. Plus to be able to use it they would have had to, as I appreciate it, have had to been some display of an overt action on his step before, I mean on his part before that even could have been introduced under the Code of Evidence Article 404 A, I think it was. But I don't see the connection between the mere certainly possession of drugs, which he was clearly, the evidence revealed had drugs on his person, as well as in his system. The jury, it if were so inclined, could have inferred something about his character from that. I don't know how it could make the leap to infer that that somehow justified or mitigated a homicide.

Again, even the mere fact that he had a reputation or, I'm sorry, not a reputation, but a record, I guess, from one, from which one could have assumed a reputation for possession, possessing weapons, I don't see how that could lead them to conclude that that justified a, or excused a homicide in the facts of this case. There's, there's no evidence that there was, in fact, a gun or a weapon on, firearm on his person, so.

Both the Sixth Amendment of the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense. *State v. Lirette*, 11–1167 (La. App. 5 Cir. 6/28/12); 102 So.3d 801, 813, *writ denied*, 12–1694 (La. 2/22/13); 108 So.3d 763. This right does not require a trial court to permit the introduction of evidence that is inadmissible, irrelevant, or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. *Id*. The trial court is accorded great discretion in evidentiary rulings and, absent a clear abuse of that discretion, rulings regarding the relevancy and admissibility of evidence will not be disturbed on appeal. *State v. Sandoval*, 02–230 (La. App. 5 Cir. 2/25/03); 841 So.2d 977, 985, *writ denied*, 03–853 (La. 10/3/03); 855 So.2d 308.

La. C.E. art. 404(A)(2) governs admissibility of character evidence of a victim and states, in pertinent part:

> (2) Character of victim. (a) Except as provided in Article 412,[19] evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible. [footnote added].

In *State v. Brown*, 46,669 (La. App. 2 Cir. 2/29/12); 86 So.3d 726, *writs denied*, 12–0724 (La. 9/14/12); 97 So.3d 1016 and 14–0321 (La. 10/24/14); 151 So.3d 593, the defendant argued that the trial court erred by prohibiting him from presenting a full defense. He contended that critical to his defense was his ability to prove, through pertinent character traits of the victim and the victim's criminal record, that other people had a motive to kill the victim. The appellate court found that a review of the record indicated that the trial court ruled that the defendant could not admit evidence concerning the criminal history of the victim unless he first laid a foundation supporting the relevance of such character evidence. The appellate court further found that the trial court did not prevent the defendant from presenting a defense, because the defendant failed to lay a foundation sufficient to support the admission of the victim's criminal record. *Id*., 86 So.3d at 734–35.

In *State v. Keating*, 00–51 (La. App. 5 Cir. 10/18/00); 772 So.2d 740, *writ denied*, 00–3150 (La. 10/12/01); 799 So.2d 494, the defendant contended that the trial court violated his right to fully present a defense when it refused to allow him to put on evidence of the victim's criminal convictions. This Court found that there was no evidence produced that the victim made a hostile

---

[19] La. C.E. Article 412 is not applicable to the instant case.

demonstration or committed an overt act against the defendant at the time of the incident. Thus, this Court found that the trial court did not err in refusing to allow evidence of the victim's prior convictions, citing La. C.E. art. 404(A)(2)(a). This Court further found that even assuming that the trial judge erred by excluding such evidence, the defendant was not prejudiced by the ruling since the jury heard testimony regarding the victim's violent propensities as well as his criminal record. *Id.*, 772 So.2d at 746–47.

In *State v. Young*, 99–1054 (La. App. 5 Cir. 2/16/00); 757 So.2d 797, the defendant argued that the trial court erred by not allowing him to introduce evidence of the character of Willie Henderson, a friend of the victim who was present at the time of the offense, particularly his propensity for violent behavior, pursuant to La. C.E. art. 404(A)(2). This Court found that a violation of the statute in question did not create a specific victim, but that even if Mr. Henderson was considered a victim for purposes of Article 404, the requirements for admission of character evidence under that article were not met. This Court stated that the testimony indicated that it was the defendant who committed the initial hostile act. It asserted that the trial court did not err in excluding the character evidence and that the defendant was not prejudiced by the ruling. This Court noted that the defendant testified that Mr. Henderson had been involved in several shootings and armed robberies and that Mr. Henderson had a gun with him every time he saw him. This Court found that the jury heard the defendant's testimony and apparently rejected it. *Id.*, 757 So.2d at 800–01.

In the instant case, as in *Brown*, *Keating*, and *Young*, there was no evidence admitted at trial showing that the victim made a hostile demonstration or committed an overt act against Defendant at the time of the incident pursuant to La. C.E. art. 404(A)(2)(a). Defendant did not argue self-defense at trial; thus, evidence of the victim's prior convictions was not relevant. Even assuming the trial judge erred in excluding the evidence in question, we find that Defendant was not prejudiced by the ruling. Although the trial judge did not allow court records of the victim's convictions, the jury heard testimony that the victim had cocaine in his system and narcotics packaged in three plastic bags on his person at the time of his death. Also, even if evidence of the victim's criminal convictions had been admitted into evidence, we find that it would not have made much difference, since there were two eyewitnesses who indicated at trial that Defendant shot the victim.

Therefore, we find that the trial judge did not err by refusing to allow evidence of the victim's prior convictions.[20]

---

[20] *Hicks*, 213 So.3d at 462-67.

The Louisiana Supreme Court denied relief without additional stated reasons. The record thus contradicts the State's assertion that this claim was not exhausted simply because he did not raise it during post-conviction relief proceedings.[21]

The question whether evidence is constitutionally admitted or excluded is a mixed question of law and fact. *Boyer v. Vannoy*, 863 F.3d 428, 447-49 (5th Cir. 2017). Under the applicable standard of review, this Court therefore must determine whether the state-court determination is contrary to or involved an unreasonable application of Supreme Court precedent. *Id*.; *see also Caldwell v. Davis*, 757 F. Appx. 336, 338-41 (5th Cir. 2018). Hicks has made no such showing.

The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967). "A defendant's right to present a complete defense under the Sixth Amendment is 'an essential attribute' of our criminal justice system but it is not without limits." *United States v. DeLeon*, 565 F. Appx. 297, 303 (5th Cir. 2014) (citing *United States v. Najera Jimenez*, 593 F.3d 391, 402 (5th Cir. 2010) (internal quotation marks and citation omitted). Controlling law permits the exclusion of evidence consistent with the constitutional guarantee of a complete defense:

> "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). However, the Constitution also "permits judges to exclude evidence that is ... only marginally relevant or poses an undue risk of ... confusion of the issues." *Holmes v. South Carolina*, 547 U.S. 319, 326-27,

---

[21] Rec. Doc. 8-1, p. 4. *See* Appellant Brief, 16-KA-0462; State Rec., Vol. 6 of 7 and Louisiana Supreme Court Writ Application, 17-KO-445; State Rec., Vol. 7 of 7 (although the copy of the writ application included in the record appears to be missing page 2, the State does not dispute that Hicks sought review of the two claims raised below in the intermediate court of appeal).

126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (internal quotation and citations omitted).

*United States v. Rodriguez*, 762 F. Appx. 197, 198 (5th Cir. 2019); *see also Caldwell v. Davis*, 757 F. Appx. at 339-40.    The right to present even relevant evidence may be limited, as the Supreme Court has explained:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).    As the Supreme Court has observed, "[o]nly rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."    *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (citing *Holmes v. South Carolina*, 547 U.S., at 331, 126 S.Ct. 1727 (rule did not rationally serve any discernible purpose); *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (rule arbitrary); *Chambers v. Mississippi*, 410 U.S. 284, 302–303, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (State did not even attempt to explain the reason for its rule); *Washington v. Texas*, 388 U.S. 14, 22, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (rule could not be rationally defended)).

To the extent Hicks may argue that the evidence was impermissibly excluded at trial because the trial court misapplied state evidentiary rules in denying his motion in limine, that claim is not cognizable on federal habeas review.    A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law);

*accord Molo v. Johnson*, 207 F.3d 773, 776 n. 9 (5th Cir. 2000); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).    Federal habeas review is limited to errors of constitutional dimension; thus, federal courts do not sit to review the mere admissibility of evidence under state law.    *Estelle*, 502 U.S. at 67-68; *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998).

The only issue before the Court on habeas review is whether the alleged improper exclusion of evidence constituted a denial of fundamental fairness under federal law.    *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) ("[A] state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness."); *Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir. 1977).    "Erroneous exclusion of evidence is fundamentally unfair if the evidence was material in the sense that it was crucial, critical, and highly significant."    *Porretto v. Stalder*, 834 F.2d 461, 465 (5th Cir. 1987).

The evidentiary rule in this case was applied to exclude inadmissible and largely immaterial evidence.    The appellate court reasoned that evidence regarding the victim's past criminal convictions was not relevant to a claim of self-defense because Hicks made no such claim.    In fact, Hicks denied he was at the bar when the victim was shot.    The defense did not establish a foundation for evidence regarding the victim's dangerous character. Notably, Hicks has not argued that Louisiana Code of Evidence Article 404(A)(2) is arbitrary or disproportionate to the purpose it serves.    *See United States v. Scheffer*, 523 U.S. 303, 308

(1998).

Additionally, as the state appellate court noted, the highly prejudicial character evidence in question had minimal probative value and would have added little if anything to his defense.    Hicks' stated hope was that "proof of the victim's status as a convicted dope dealer could have made it marginally more arguable that his death arose out of that conduct, instead of a motiveless killing by a stranger."[22]    Hicks argued that the victim's criminal conviction history was relevant to show his habit and routine practice of conducting dangerous narcotics transactions.    The defense maintained that the victim's pattern involving past illegal narcotics transactions was significant because it suggested he may have had enemies with potential motive to harm the victim, who was in possession of drugs and tested positive for them in his system at the time of his death.    Hicks claimed he needed "to present evidence of the victim's criminal conviction record for the purpose of showing to the jury that as a notorious narcotics dealer, the victim was a target for violence" and further prove "that the victim's killer may well have been any number of persons in Alex's Bar that night, thus creating a reasonable doubt that it was [Hicks] who was the assailant."[23]

On the record presented, the victim's criminal conviction history was immaterial. Even without the conviction record, the defense still managed to introduce evidence in support of their purported "drug dealings" theory to implicate others at the bar.    As the court of appeal pointed out, "the jury heard testimony that the victim had cocaine in his

---

[22]  Rec. Doc. 3, p. 29.

[23]  Rec. Doc. 3, pp. 25-26.

system and narcotics packaged in three plastic bags on his person at the time of his death."[24] Arguably, the victim could have had dealings with any number of individuals at the bar that night.    However, the testimony offered by the two eyewitnesses at the bar that night, one of whom was Hicks' own nephew, plainly refuted the inference that someone other than Hicks shot the victim.

Under the circumstances, the limitation imposed reasonable restrictions on Hicks' ability to present largely irrelevant evidence in his own defense and did not render the trial fundamentally unfair.    Because evidence concerning the prior convictions was inadmissible under Louisiana law, and he has not shown that the state evidentiary rules serve no legitimate purpose or are disproportionate to the ends that they are asserted to promote, Hicks has not shown that the trial court's rulings deprived him of his due process right to a meaningful opportunity to present a complete defense.    *Lyons v. Vannoy*, Civil Action No. 17-4621, 2018 WL 2944631, at *11-12 (E.D. La. May 14, 2018) (citing *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006)), *adopted* 2018 WL 2938309 (E.D. La. June 12, 2018).    The state-court decision was not contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court.    Hicks is not entitled to federal habeas relief on this claim.

B. *Prosecutorial Misconduct*

Hicks asserts that his right to due process and a fair trial was violated when the prosecutor made improper remarks during closing argument.    This claim was also considered by the intermediate court of appeal and the Louisiana Supreme Court, and thus

---

[24] *State v. Hicks*, 213 So.3d at 466.

properly exhausted, on direct appeal.    In denying the claim, the Louisiana Fifth Circuit

reasoned:

> Defendant argues that it was error for the prosecutor in closing argument to personally attack defense counsel by suggesting that his defense amounted to a denigration of the value of the life of the victim. First, he contends that the prosecutor's claim was made in closing argument and was thus not in response to anything defense counsel said in argument. Second, Defendant asserts that the coroner testified to the presence of cocaine in the system of the victim in response to direct examination by the prosecutor. Third, he argues that the prosecutor cynically and falsely suggested that the victim was a mere casual user of cocaine when the prosecutor knew that the victim had done more than "make a mistake" but rather was a career offender with multiple cocaine distribution convictions on his record, a record that the prosecutor refused to let the jury see. As such, Defendant contends that the prosecutor's argument was so improper as to warrant reversal.

> The State responds that the prosecutor's statements do not warrant a reversal of the trial court's ruling. It further responds that the prosecutor's comments were merely a retort to defense counsel's "crafty" method of suggesting that the victim engaged in long-term cocaine use. The State notes that the trial court properly addressed the prosecutor's comments before the jury when the objection was raised by stating that he had already told the jury that it was their memory of what the testimony and the facts were that controlled. Lastly, the State asserts that Defendant has offered no jurisprudence to suggest that such comments constitute reversible error.

> **During closing argument, the prosecutor stated:**

>> **The defense has somehow tried to diminish him by suggesting, because he might have had some chemicals in his system, that somehow his life—**
>> **Defense counsel then objected to the photo of the victim with his daughter remaining on the screen. The objection was overruled.**

> **The prosecutor continued, stating:**

>> **The defense subtly tried to, to suggest that maybe his life wasn't worth so much or he's dispensable because he had a substance in his system. Well, that's not an element and it certainly is not appropriate to bring up, to suggest that somehow his life was less valuable. We all know people who make mistakes and that doesn't mean that they should be murdered.**

> **Defense counsel objected, stating that he never suggested or implied in**

**any way that the victim's life was not equally valuable to that of every other person. The prosecutor replied that this was closing argument. The trial judge told defense counsel that he had the right to respond, that this was argument, and that he had already told the jury "it's their memory of what the testimony and the facts are that controls." The trial judge then told the prosecutor to proceed.**

**The prosecutor subsequently stated in pertinent part:**

> **As I, as I was saying, we all know people who have made mistakes but their lives are just as valuable. They're family members, they're friends, they're people we know, and nobody's lives should be taken for no reason, and that's what happened in this case.**

After he was convicted, Defendant filed a motion for new trial arguing, *inter alia*, that the trial judge erred by overruling defense counsel's objection to the prosecutor's personal attack on defense counsel. Defendant claimed that the prosecutor contended that defense counsel fashioned his defense on a theory that the victim's life had no value because the victim was found possessing drugs. Defendant argued that his counsel never suggested this and that it was an *ad hominem* attack on his character calculated to prejudice the jury against the defense.

At the hearing on the motion, Defendant made arguments similar to those made in his written motion for new trial, including arguments regarding the prosecutor's characterization of his defense as a character attack on the victim. The prosecutor responded that it was only argument and that he thought it prudent to address the issue of drugs before the jury. He added that the jury was instructed that it was just argument and not facts and that it did not prejudice anyone. After hearing arguments of counsel, the trial judge denied the motion for new trial, stating in pertinent part:

> The argument to the jury, while I understand and I recall counsel's indignation about that, I do believe that that is certainly a tempest in a teapot. The jury was instructed that what, what counsel said was their contentions, it was not evidence, and I, I just don't think that it, it was as important as the significance that Mr. Goza puts on it.

The scope of argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case. La. C.Cr.P. art. 774. The argument shall not appeal to prejudice. *Id*. The State's rebuttal shall be confined to answering the defendant's argument. *Id*. However, a prosecutor retains "considerable latitude" when making closing arguments. *State v. Taylor*, 93–2201 (La. 2/28/96); 669 So.2d 364, 374, *cert. denied*, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). Further, the trial judge has broad

discretion in controlling the scope of closing arguments. *State v. Greenup*, 12–881 (La. App. 5 Cir. 8/27/13); 123 So.3d 768, 775, *writ denied*, 13–2300 (La. 3/21/14); 135 So.3d 617.

Nevertheless, even if the State's argument was improper, a conviction or sentence will not be reversed for improper closing argument unless the court is thoroughly convinced the remarks influenced the jury and contributed to the verdict. *Taylor*, 93–2201; 669 So.2d at 375. The Louisiana Supreme Court has recognized that "much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the argument, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence." *State v. Mitchell*, 94–2078 (La. 5/21/96); 674 So.2d 250, 258, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996).

In the instant case, the record reflects that during the direct examination of the coroner, Dr. Huber, the prosecution elicited testimony that the toxicology report showed cocaine in the victim's system. On cross-examination, defense counsel said that he had the impression that the cocaine metabolites found in the blood, urine, and fluid behind the eyes meant that the victim was engaged in both short and long-term use of that drug. Dr. Huber testified that it was possible that the victim could have had some long-term use, but that the presence of cocaine metabolites in those areas did not necessarily mean there was long-term use. Also on cross-examination, defense counsel elicited testimony from Dr. Huber indicating that the victim had cocaine on his person at the time of his death. Dr. Huber testified that the coroner's office wrote in the report that the sheriff's office had "coke" in evidence.

Additionally, during the cross-examination of Detective Pugh, defense counsel elicited testimony from him that State's Exhibit 6 was the contents of the victim's pocket. During cross-examination, Detective Pugh identified a Louisiana State Police Crime Laboratory evidence submittal form and testified that "E–6" was "a sealed evidence envelope with a clear plastic bag containing three clear plastic bags containing one white powder, second bag containing one white powder and the third containing a white pill." Detective Pugh stated that it was sent to the State Police Crime Lab for a drug analysis but that he was not furnished any results.

After reviewing the foregoing testimony, we find that the trial judge properly addressed the prosecutor's comments. The prosecutor was simply pointing out that the victim's life had value, even if he was an illegal drug user. Additionally, the trial judge gave the jury the preliminary instructions that what the lawyers said in their closing arguments was not evidence. Further, during the jury instructions, the trial judge told the jury that they must decide the facts from the testimony and other evidence and then apply the law to those facts in reaching their verdict. The trial judge explained to the jury again that the closing arguments were not evidence.

> Therefore, we do not find that the trial judge abused his discretion by effectively overruling defense counsel's objections to the prosecutor's closing argument comments.[25]

The Louisiana Supreme Court denied relief without additional stated reasons.

The Due Process Clause of the Fourteenth Amendment guarantees the right to a fair trial, and prosecutors have a "duty to refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). The clearly established standard set forth in *Darden v. Wainwright*, 477 U.S. 168 (1986), governing claims of prosecutorial misconduct for purposes of habeas review under AEDPA, provides that "a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden*, 477 U.S. at 181). Ultimately, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). As the Court in *Darden* explained, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned," unless the court determines that the improper remarks rose to the level of a due process violation. *Darden*, 477 U.S. at 181. Furthermore, the highly generalized *Darden* standard gives courts "more leeway ... in reaching outcomes in case-by-case determinations." *Parker v. Matthews*, 567 U.S. at 48 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The Supreme Court has stressed that the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise

---

[25] *State v. Hicks*, 213 So.3d at 467-69 (emphasis added).

of supervisory power." *Darden v. Wainwright*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. at 642).   In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim " 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' "   *Parker v. Matthews*, 567 U.S. at 48 (quoting *Harrington*, 562 U.S. at 103). For purposes of federal habeas review, a claim of prosecutorial misconduct presents a mixed question of law and fact.   *Brazley v. Cain*, 35 F. Appx. 390, 2002 WL 760471, at *4 n. 4 (5th Cir. Apr. 16, 2002).   The Court must determine whether the denial of relief was contrary to or an unreasonable application of Supreme Court law.

Considering the controlling legal principles and the prosecutor's remark viewed in context of the entire trial record, including closing argument, Hicks has not shown that the state-court determination was contrary to or an unreasonable application of clearly established federal law.   The state court reasonably found that the comment did not infect Hicks' trial with unfairness so as to deny him due process.

The victim's drug use was brought out at trial.   From the outset, defense counsel informed jurors in opening statements that the defense intended to show "the victim was carrying bags of cocaine and another drug, hydrocodone, on his person…[] that in his blood stream were, well, cocaine metabolized in the urine and cocaine itself in his blood stream." [26] During trial, the defense established through witness testimony that a significant amount of cocaine was found in the victim's system, and several bags containing white powder and a

---

[26] State Rec., Vol. 4 of 7, Trial Transcript, p. 761.

pill were discovered in the victim's pockets.[27]    During closing argument, the prosecutor remarked that "the defense subtly tried to suggest that maybe the victim's life wasn't worth so much or he's dispensable because he had a substance in his system...[] and it certainly is not appropriate to suggest that somehow his life was less valuable."[28]    The prosecutor continued, "We all know people who make mistakes and that doesn't mean that they should be murdered."    Defense counsel promptly objected stating he had not suggested or made any such inference that the victim's life was less worthy.    In considering the brief remark and the defense objection, the trial judge noted that defense counsel had the opportunity to offer an argument in response and that the jury was already told that it is their recollection of the testimony and the facts, *i.e.*, the evidence, that controls.    Defense counsel chose not to mention that issue in his closing argument.

Whether or not intended by the defense, by eliciting evidence of the victim's drug use, the objective evidence itself arguably led to varying theoretically possible inferences by the jury, and the state prosecutor's comment refuting one of those inferences was not a personal attack on defense counsel.    The appellate court commented it was fair during argument for the prosecutor to point out that the victim's life had value, even if he was an illegal drug user. As the United States Fifth Circuit has explained, "[t]he purpose of closing argument is to assist the jury in analyzing and evaluating the evidence."    *United States v. Washington*, 44 F.3d 1271, 1279 (5th Cir. 1995).    "A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that

---

[27]  State Rec., Vol. 4 of 7, Trial Transcript (Dr. Huber), pp. 768-69; (Detective Pugh), p. 817.

[28]  State Rec., Vol. 5 of 7, Trial Transcript, pp. 1078-79.

can be drawn from that evidence. 'A prosecutor may not directly refer to or even allude to evidence that was not adduced at trial.' " *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008) (quoting *United States v. Murrah*, 888 F.2d 24, 26 (5th Cir. 1989)); *see also Washington*, 44 F.3d at 1278 ("a prosecutor is not prohibited from 'recit[ing] to the jury those inferences and conclusions he wishes [the jury] to draw from the evidence so long as those inferences are grounded upon the evidence' "). Here, the prosecutor's remark arguably offered such insight about evidence that was properly adduced at trial. Furthermore, given the brief and isolated nature of the comment in closing involving inferences about the victim (to which defense counsel on the record denied ever making), even if construed as a personal affront to defense counsel, it was not so prejudicial as to render the trial fundamentally unfair.

Additionally, jurors were instructed to consider only evidence admitted at trial. They were specifically instructed that during closing argument the attorneys presented their contentions regarding what they thought the evidence has shown or perhaps not shown and what inferences or conclusions they think may be drawn from the evidence, but that opening statements and closing argument are not evidence. There is no reason to believe that jurors in this case disregarded that instruction. *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000) ("A jury is presumed to follow its instructions."). Viewed in the proper context, the comment at issue did not render Hicks' trial fundamentally unfair. Accordingly, Hicks fails to establish that the state-court determination rejecting his prosecutorial misconduct claim was either contrary to or an unreasonable application of clearly established Supreme Court law.

*C. Ineffective Assistance of Counsel*

In claims three and four, Hicks alleges that trial counsel denied him the right to testify at trial and failed to inform him about a pretrial plea offer from the State. Although the record offers no objective evidence that counsel denied him the right to testify, Hicks alleges the following occurred:

> Well in advance of trial and before the defense rested, it was discussed between the petitioner and trial counsel that he would need to testify because the jury would want to hear his side of just what happen [sic] and that he would testify on his own behalf that he did not shoot the victim, Anthony Terrell Young. But trial counsel rested without calling Mr. Hicks to the stand, even after Mr. Hick's insistence that he wanted to testify. Trial counsel told petitioner that "he was not going to put him on the stand... the State had the burden of proof and he did not feel that they proved that burden." After petitioner still insisted on testifying, counsel told him that "it's my decision to make on whether or not to put you on the stand, not yours."[29]

According to Hicks, "he begged counsel to testify, but counsel only warned him that the District Attorney was crafty and his criminal past would be brought up, and that he wouldn't want the jury to hear it."[30]

A criminal defendant has a fundamental constitutional right to testify in his own behalf at trial. *See Rock v. Arkansas*, 483 U.S. 44, 49–52 (1987). The claim that trial counsel interfered with a defendant's right to testify is properly raised in the context of a claim of ineffective assistance of counsel. *United States v. Mullins*, 315 F.3d 449, 452 (5th

---

[29] Rec. Doc. 3, p. 33.

[30] *Id*. at 38. Even his unsupported allegation raises suspicion and appears to be stock language perhaps taken from other briefs involving similar claims. *See*, *e.g.*, *White v. Vannoy*, Civ. Action 16-643, 2019 WL 2396918, at *5 (W.D. La. May 16, 2019) (where in support of his claim that counsel denied him the right to testify White alleged that "he practically begged counsel to let him testify, but counsel warned him that the district attorney was crafty and would use his criminal past against him").

Cir. 2002), *cert. den.*, 541 U.S. 1031 (2004) (citing *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001)).

In order to prove ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e,* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a

reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.

Because the claims were adjudicated on the merits in state court, habeas relief is available only if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86 (2011). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted).

Hicks raised the ineffective-assistance-of-counsel claims in his post-conviction relief application. The state courts denied relief on the merits. The Louisiana Supreme Court ultimately held that Hicks failed to show that he received ineffective assistance of counsel under *Strickland*. As the Louisiana Fifth Circuit recognized, Hicks presents no evidence to support his conclusory assertions that trial counsel prevented him from testifying despite Hicks' demand to do so. The record contains nothing to support his claim.[31] Hicks cannot establish deficient performance based solely on an unsubstantiated and conclusory allegation. *See Murray v. Vannoy*, 806 F. Appx. 341 (5th Cir. 2020) (citing *Strickland*, 466 U.S. at 687) ("the record is devoid of any evidence to corroborate his conclusory assertion that he expressed his desire to testify but was prevented from doing so by his attorney, and therefore Murray had not demonstrated any deficient performance by counsel.).

---

[31] The record reflects that Hicks was present but did not object when his counsel indicated that the defense had no other witnesses and was ready to rest or during the charge conference when the trial judge stated he would delete the language in the jury charge about judging the testimony of the defendant in the same manner as other witnesses given that counsel would not be calling Hicks. Arguably, his inaction suggests Hicks acquiesced in his counsel's advice. *See* State Rec., Vol. 5 of 7, Trial Transcript, pp. 1038-44.

A habeas petitioner has the burden of proving that he was denied this constitutional right. It is not enough for a habeas petitioner simply to state that he told his trial attorney that he wanted to testify and that his attorney prohibited him from doing so. *Turcios v. Dretke*, No. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475–76 (7th Cir. 1991)); *accord Jones v. Cain*, Civil Action No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, Civil Action No. H-06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007). The claim requires substantiation as the United States Seventh Circuit Court of Appeals explained:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." ...
>
> [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood v. Clark*, 939 F.2d at 475-76. The United States Fifth Circuit has expressed its own reservations concerning these types of unsubstantiated claims:

> Courts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic. *See* [*Underwood*, 939 F.2d at 476] ... (stating that a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[I]t just is too facile a tactic to be allowed to succeed"). We agree that there is "a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right ... to testify in his own behalf without rendering the criminal process unworkable."

*United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) (quoting *Underwood*, 939 F.2d at

475).   Similarly, Hicks' wholly unsubstantiated assertions fail to establish that counsel denied him the right to testify.

Moreover, Hicks fails to show that there is a reasonable probability that his testimony would have altered the verdict.   Trial counsel advanced an alibi defense through Hicks' wife's testimony.   She related in detail how on the night in question Hicks was at home during the relevant time period and could not have been at the bar when the shooting occurred.   There was no reason to put Hicks on the stand simply to state he was not at the bar and did not shoot the victim, essentially offering the same story told by his wife, and exposing him to damaging cross-examination.   His repetitive testimony likely would not have changed the verdict.   For these reasons, Hicks is not entitled to relief on this claim.

Likewise, Hicks offers no evidence to support his claim that trial counsel failed to convey a pretrial plea offer.   He offers only an unsubstantiated assertion that he later became aware of the plea offer after trial when co-counsel, Lisa Parker, told his aunt that the State offered him a plea of manslaughter and asked her why Hicks did not take it.[32]   He submitted no affidavits in support, in particular one from Lisa Parker, confirming the existence of the plea offer, and the record contains nothing about a purported offer or any failure to communicate that offer.   Hicks has presented no evidence whatsoever of the existence of a plea offer, much less evidence that the State was in fact willing to accept a plea bargain to manslaughter.

"To establish prejudice where 'counsel's deficient performance causes a plea offer to lapse or be rejected,' a petitioner 'must demonstrate a reasonable probability that: (1) he

---

[32] Rec. Doc. 3, p. 43.

would have accepted the plea offer had he been afforded effective assistance of counsel; (2) the plea would have been entered without the prosecution canceling the offer or the trial court's refusing to accept it; and (3) the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.' " *King v. Davis*, 898 F.3d 600, 605-06 (5th Cir. 2018) (quoting *United States v. White*, 715 F. App'x 436, 437–38 (5th Cir. 2018) (citing *Missouri v. Frye*, 566 U.S. 134, 147, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012)). Obviously, counsel cannot be deemed ineffective for failing to secure a plea bargain that the State was unwilling to enter. *See*, *e.g.*, *United States v. Valdez*, Nos. 4:13-CV-080 and 4:11-CR-065, 2013 WL 1496935, at *3 (N.D. Tex. Apr. 10, 2013) ("It is well-established that there is no constitutional right to a plea bargain. For movant to succeed on [a claim that counsel was ineffective for failing to secure a plea agreement], he must show a reasonable probability that, but for deficient representation, the government would have offered a plea agreement that the court would have accepted." (citation omitted)). As the United States Fifth Circuit Court of Appeals observed in *King*, "[i]t follows that if [petitioner] cannot show that the offer actually existed, he also cannot show that the trial court would have accepted it. *See Frye*, 566 U.S. at 147, 132 S.Ct. 1399 (To show prejudice ... [a petitioner] must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it.)." *King*, 898 F.3d at 606 n. 4. Thus, in *King*, the Fifth Circuit rejected the claim that counsel was ineffective for allegedly failing to convey a 15-year plea deal because "[a]bsent such an offer (or absent counsel's failure to convey such an offer), King cannot demonstrate that his counsel performed deficiently—let alone that the state court's decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent." *Id*. at 606.

Similarly, here, on the showing made, the state court reasonably concluded that Hicks' conclusory allegations fail to establish either deficient performance or prejudice to support a claim of ineffective assistance of counsel. In sum, Hicks has not demonstrated that the state court's decision rejecting the ineffective-assistance-of-counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

Finally, Hicks argues that cumulatively the ineffective-assistance-of-counsel errors denied him a fair trial. In *Derden v. McNeel*, 938 F.2d 605, 610 (5th Cir. 1991), the United States Fifth Circuit Court of Appeals recognized an independent claim based on cumulative error applicable in the rare instance where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.' " *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Hicks has not shown entitlement to relief for purported cumulative error.

The Court has thoroughly reviewed each of the alleged errors of trial counsel. None demonstrate an error in counsel's performance that could have caused any cumulative prejudicial effect. *See Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (citing *Derden*, 978 F.2d at 1454 (meritless claims or claims that are not prejudicial cannot be cumulated regardless of the total number raised)). Therefore, no errors exist to cumulate. *Norris v. Davis*, 826 F.3d 821 (5th Cir. 2016) ("None of Norris's individual claims of prosecutorial misconduct is meritorious, and he cannot cumulate non-meritorious claims into a valid cumulative prosecutorial misconduct claim.") (citing *Hughes v. Dretke*, 412 F.3d

582, 597 (5th Cir. 2005)).    The Fifth Circuit has made it clear that cumulative error analysis is only appropriate where there is constitutional error to cumulate.    *See United States v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012) (en banc); *Derden*, 978 F.2d at 1461; *see also Villanueva v. Stephens*, 555 F. Appx. 300, 308 (5th Cir. 2014); *accord United States v. Thomas*, 724 F.3d 632, 648 (5th Cir. 2013) ("[T]here is no precedent supporting the idea that a series of 'errors' that fail to meet the standard of objectively unreasonable can somehow cumulate to meet the high burden set forth in *Strickland*."); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008) ("[T]he district court noted that '[m]eritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised'. We agree."); *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006) ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions.").    As the United States Fifth Circuit Court of Appeals noted with respect to analogous claims of cumulative error:    "Twenty times zero equals zero." *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987).    Accordingly, the claim of cumulative error should be denied.

### RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Hicks' application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[33]

New Orleans, Louisiana, this ___6th___ day of _____August_____, 2020.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[33] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.